CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 24 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 5:16-cr-8 |
| v. | ) |
| | ) |
| JASON BRADLEY, et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | ) United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendant Deborah Ryba's motion to suppress. ECF No. 243. The government filed a response opposing the motion, ECF No. 259, and the court addressed the matter at a hearing held on February 27, 2017. For the reasons set forth below, the court **DENIES** Ryba's motion to suppress.

### I.

On February 10, 2015, Special Agent Robert Smith of the Drug Enforcement Administration (DEA) filed an application for a search warrant, along with a supporting affidavit, seeking access to two of Ryba's email accounts—namely, deborahryba@gmail.com (the "Deborah account") and debyryba@gmail.com (the "Deby account"). In the Matter of the Search of Info. Associated with Deborahryba@gmail.com and Debyryba@gmail.com that is Stored at Premises Controlled by the Google Corp., No. 5:15-MJ-6 (W.D. Va. Feb. 10, 2015).[1] The search warrant sought evidence of drug offenses in violation of 21 U.S.C. §§ 952(a), 841(a)(1), 846 and money laundering offenses in violation of 18 U.S.C. §§ 1956, 1957.

---

[1] Hereinafter, citations to the affidavit reference ECF No. 5-1 of Case No. 5:15-MJ-6 in the Western District of Virginia.

In establishing probable cause to conduct the search, the affidavit relies on emails, financial records, cooperating witnesses, and other sources to show Ryba's involvement in drug and money laundering activity. Law enforcement obtained many of those sources in the course of a related investigation targeting Modern Day Prophet, an alleged business front engaging in international drug trafficking and money laundering. The affidavit focuses largely on Ryba and defendant Jason Bradley's ties to Modern Day Prophet. Ryba is identified as Bradley's girlfriend or spouse.

United States Magistrate Judge Joel Hoppe determined the facts set forth in the affidavit established sufficient probable cause and, on February 10, 2015, issued the search warrant. On July 5, 2016, a grand jury returned an indictment naming Ryba, Bradley, and five others as codefendants and coconspirators. A superseding indictment followed on July 19, 2016, naming the same defendants.

The superseding indictment charges Ryba with the following criminal violations: Count One – Drug Trafficking Conspiracy; Count Two – Conspiracy to Import a Controlled Substance; Count Three – Conspiracy to Commit Promotion Money Laundering; Count Four – Conspiracy to Commit International Money Laundering. ECF No. 23. The drug counts allege that Ryba and others were involved with the international sale of controlled substances and controlled substance analogues in violation of 21 U.S.C. §§ 846, 963. The money laundering counts allege that Ryba and others conspired to conduct financial transactions, which they knew involved the proceeds of unlawful drug activity, in violation of 18 U.S.C. § 1956(h). Some of the allegations in the superseding indictment rely on emails

2

obtained during the search that Ryba challenges in the motion at bar. See, e.g., Superseding Indictment, ECF No. 23, ¶¶ 7, 29.

Ryba asks the court to suppress evidence found in the Deborah and Deby email accounts and to exclude other evidence derived from those accounts, including emails on the account of sunnyerday@gmail.com. Ryba argues that the affidavit used to establish probable cause to obtain those emails is defective. Specifically, Ryba asserts that Agent Smith, in authoring the affidavit, violated her Fourth Amendment protections by including inaccurate statements and omitting material exculpatory information with the intent to make, or in reckless disregard of making, the affidavit misleading. While Ryba concedes that the search warrant and affidavit are facially valid, she argues that without the misstatements and omissions in the affidavit, the Magistrate Judge would not have found probable cause to justify the searches.

The court held a hearing on February 27, 2017 to address Ryba's motion to suppress and other pretrial motions. The bulk of the argument concerning the suppression motion focused on whether Ryba met the preliminary showing to even receive an evidentiary hearing on the matter. See Franks v. Delaware, 438 U.S. 154 (1978); United States v. Colkley, 899 F.2d 297 (4th Cir. 1990).[2] While the court was skeptical as to whether Ryba satisfied this

---

[2] In order to receive a Franks evidentiary hearing examining the integrity of a search warrant affidavit, the defendant must:
> [F]irst make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." This showing "must be more than conclusory" and must be accompanied by a detailed offer of proof. In addition, the false information must be essential to the probable cause determination: "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

3

burden, the court, in an abundance of caution, allowed Ryba to call Agent Smith as a witness and question him about the alleged defects of the affidavit. As explained below, the court finds that neither the contentions raised in the motion to suppress nor the testimony of Agent Smith support a conclusion that the affidavit was defective. Therefore, law enforcement had probable cause to conduct a search of the Deborah and Deby email accounts and the evidence obtained therein will not be excluded at trial.

## II.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. A defendant who asserts a Fourth Amendment violation by alleging that a facially valid search warrant affidavit is defective must satisfy the standard set forth in Franks v. Delaware, 438 U.S. 154 (1978). "To establish a Franks violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit." United States v. Wharton, 840 F.3d 163, 168 (4th Cir. 2016).[3] In other words, Franks sets forth a two-prong test of intentionality and materiality, both of which the defendant must show by a preponderance of the evidence. United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016). In the case at bar, Ryba has failed to establish that the alleged misstatements or omissions were material to the

---

Colkley, 899 F.2d at 300 (citations omitted) (quoting Franks, 438 U.S. 155-72).

[3] Franks concerned only false statements, see 438 U.S. at 171, but, as noted, the Fourth Circuit has extended this rule to include material omissions. Colkley, 899 F.2d at 300. Ryba claims that Agent Smith, in authoring the affidavit, made false statements as well as material omissions.

4

Magistrate Judge's finding of probable cause. Therefore, the court need not reach the intentionality prong of Franks in order to conclude that the search of Ryba's email accounts was proper under the Fourth Amendment.

## A.

To prove the materiality prong under Franks, Ryba must show that if the Magistrate Judge had disregarded the alleged false statements in the affidavit and considered the alleged omissions, then he would not have found probable cause to justify the search. Wharton, 840 F.3d at 169 (the court must "determine whether or not the corrected warrant affidavit would establish probable cause"). The alleged defects in the affidavit "must do more than potentially affect the probable cause determination: [they] must be 'necessary to the finding of probable cause.'" Colkley, 899 F.2d at 301. If the "corrected" affidavit would have established probable cause, then Ryba's Fourth Amendment protections were not violated.

### 1.

In her motion to suppress, Ryba does not undermine the following facts set forth in the affidavit, which, standing alone, established probable cause to search Ryba's email accounts.[4] According to the affidavit, the DEA had been investigating Robert Schroeder and his coconspirators for drug trafficking and money laundering for months prior to the filing of the search warrant application. Aff. ¶¶ 6, 7. Law enforcement had conducted multiple controlled purchases of controlled substances and controlled substance analogues from

---

[4] The summary of the affidavit that follows includes facts that Ryba either does not challenge or challenges on the basis that certain omissions would have shown these facts to evidence innocent activity rather than criminal conduct. The court will address the alleged omissions below, in Section II.A.3. of this Memorandum Opinion. Furthermore, Agent Smith's testimony at the February 27, 2017 hearing did not affect the facts as stated in the affidavit or as summarized herein.

5

Schroeder. Aff. ¶ 7. Schroeder, along with Ryan Buchanan and David Scholz, had signature authority on bank accounts for a business named Modern Day Prophet, which cooperating witnesses identified as a business front for trafficking drugs and laundering money. Aff. ¶ 10.

Between September 2011 and September 2012, one of the Modern Day Prophet bank accounts received more than $940,000 in deposits. Aff. ¶ 11. In March and April 2012, Modern Day Prophet wired a total of $185,300 to Bradley's bank account at the China Construction Bank in Hong Kong. Aff. ¶ 12. Law enforcement believed Bradley was either Ryba's boyfriend or spouse. Aff. ¶¶ 14, 20. On March 30, 2012, an email from Ryba's Deborah account was sent to Schroeder with the subject line "Next shipments might arrive today.. All are in cinci.. All dhl." Aff. ¶ 22. The email contained shipping information of six packages, each originating in Hong Kong and destined for different addresses in Illinois and Ohio. Aff. ¶ 22. Some of the packages were addressed to Buchanan and Scholz, who, as mentioned, were involved with Modern Day Prophet. Aff. ¶ 22.

On April 2, 2012, another email from the Deborah account was sent to Schroeder and similarly included shipping information of three international packages bound for different addresses in the United States. Aff. ¶ 27.[5] Those packages were addressed to "Dave or Robert," "ryan bucannan," and "robert s.," which match the names of the individuals with signatory authority on the Modern Day Prophet bank accounts. Aff. ¶¶ 10, 27. Seven of the nine packages referenced in March 30 and April 2, 2012 emails were sent to various United Parcel Service ("UPS") stores in Illinois and Ohio. Aff. ¶¶ 23, 28. The affidavit

---

[5] Law enforcement obtained the March 30 and April 2, 2012 emails as a result of executing a search warrant on Schroeder's email account artisticoverlay@gmail.com.

6

indicated that "the use of UPS Stores is a method of operation used by the SCHROEDER organization" to traffic controlled substances and controlled substance analogues. Aff. ¶ 23.

Travel records reflected that Bradley and Ryba arrived in China on August 24, 2011 and returned to the United States from Hong Kong on June 8, 2012. Aff. ¶ 14. The affidavit indentified China as a known source country for synthetically manufactured drugs and Hong Kong as a conduit country for shipping such substances from China. Aff. ¶ 15. While abroad, Bradley received payments from Modern Day Prophet into a Bank of America account in the United States, some of which were made by cashier's checks that were annotated as "inventory" or "materials." Aff. ¶ 16. Between September 2011 and September 2012, Modern Day Prophet transferred more than $220,000 to Bradley's Bank of America account. Aff. ¶ 16. In total, Modern Day Prophet transferred more than $405,300 to Bradley around the time Bradley and Ryba were Asia in 2011 and 2012.

In February 2014, Ryba established an E* Trade investment profile that listed a home and email address. Aff. ¶ 19.[6] The profile showed Ryba's home address as a UPS store in Chicago, Illinois and the Deby account (debyryba@gmail.com) as Ryba's email address. Aff. ¶ 19.

On November 17, 2014, Bradley and Ryba again travelled to Asia, this time with a final destination of Phuket, Thailand. Aff. ¶ 30. Law enforcement had recently intercepted a phone call between Schroeder and another coconspirator during which Schroeder said, "I can't get nothing … the next time I'd be able to even do anything is when my boy goes out

---

[6] The affidavit notes that Bradley transferred $10,000 to Ryba's E* Trade account on February 7, 2014.

7

there ... that wouldn't even be til like end of November, [2014]." Aff. ¶ 29.[7] Other calls revealed that Schroeder expected to receive controlled substances or controlled substance analogues close to January 1, 2015. Aff. ¶ 31. Because Bradley and Ryba's travel arrangements coincided with Schroeder's anticipated receipt of illicit drugs, and in light of the past relationship among these individuals, Agent Smith concluded that Bradley and Ryba were one of multiple sources that Schroeder used to obtain controlled substances or analogues of controlled substances from Asia. Aff. ¶ 33.

Given these facts, the Magistrate Judge concluded that probable cause existed to search both of Ryba's email accounts for evidence of drug trafficking and money laundering. As explained below, this conclusion was well-founded.

### 2.

The totality of the circumstances test of Illinois v. Gates, 462 U.S. 213 (1983), governs whether the affidavit supported a finding of probable cause. Specifically, Gates requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." Id. at 238. Probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232. Courts will not invalidate a warrant based on a "hypertechnical, rather than a commonsense" interpretation of the warrant affidavit. Id. at 236. Indeed, the probable cause "standard is not particularly demanding, and the evidence

---

[7] In prior phone calls intercepted by law enforcement, Schroeder expressed his frustration that several packages had not arrived from China. Aff. ¶ 29. In fact, United States Customs and Border Protection officers had seized those packages, which they suspected contained controlled substances or controlled substance analogues. Aff. ¶ 29.

8

need not provide the officers with an air-tight case." United States v. Ortiz, 669 F.3d 439, 446 (4th Cir. 2012). The court does not review the Magistrate Judge's decision de novo; rather, the court must ascertain only whether the Magistrate Judge had "a substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239.

A "practical, common-sense" inquiry shows that Ryba's communications with Schroeder, and the many financial transactions surrounding their relationship, plainly supported probable cause to search Ryba's email accounts for evidence of drug and money laundering offenses. Id. at 230. As for evidence of drug trafficking, law enforcement was well aware of Schroeder and Modern Day Prophet's activities regarding controlled substances and controlled substance analogues at the time Agent Smith applied for the search warrant. Ryba's emails to Schroeder about international shipments addressed to members of Modern Day Prophet (i.e., known drug traffickers) allowed the Magistrate Judge to properly conclude that there was a fair probability that Ryba was involved in illicit drug activity. See Colkley, 899 F.2d at 302 (a valid search requires "probable cause to believe the suspect committed an offense"); Gates, 462 U.S. at 246 (there must be a "fair probability" that the suspect committed an offense).

The affidavit also supported probable cause to search for evidence of money laundering. The affidavit indicates that Modern Day Prophet was involved in money laundering activities when it paid Bradley, Ryba's partner, $185,300 between March and April 2012. Ryba sent the two emails to Schroeder regarding the international shipments within the same time period, on March 30 and April 2, 2012. The affidavit also notes that, based on Agent Smith's training and experience, "individuals involved with narcotics trafficking

9

and/or money laundering utilize third parties, to include family members and friends, to conceal their illegitimate income and assets." Aff. ¶ 19. The payments from Modern Day Prophet to Ryba's partner, which occurred within weeks of Ryba sending emails about shipments addressed to members of Modern Day Prophet, showed to a fair probability Ryba's involvement in money laundering. Cf. United States v. $57,000 in N. Carolina Nat. Bank Account No. 031028293, 21 F.3d 425 (4th Cir. 1994) (unpublished) (finding probable cause to search for evidence of money laundering by defendant who recently received a $57,000 check and had a background in drug crimes).[8]

In short, the Magistrate Judge had a substantial basis on which to determine that Ryba's two emails to Schroeder concerning international shipments addressed to members of Modern Day Prophet—sent close in time to her partner receiving $185,300 from Modern Day Prophet—supported probable cause as to Ryba's involvement in drug and money laundering activity.

---

[8] The government, in its response in opposition to Ryba's motion to suppress, argues that probable cause existed as to both drug trafficking and money laundering. The court agrees, but also notes that the plain view doctrine under the Fourth Amendment likely serves as an additional and independent ground for law enforcement to have seized evidence of money laundering. See United States v. Williams, 592 F.3d 511, 521 (4th Cir. 2010). In Williams, officers had a valid warrant to search the defendant's computer for evidence of illegal threats. While conducting the search, the officers also found evidence of child pornography, which the defendant challenged as outside the scope of the warrant. Id. The Fourth Circuit rejected the defendant's request to exclude the evidence of child pornography, holding that the officers had authority to search the entire computer and because the illicit images were in plain view, seizure of that evidence did not violate the Fourth Amendment. Id. at 524. In this case, Ryba's two emails to Schroeder plainly established probable cause to search for evidence of drug crimes in her email accounts. Even if law enforcement had not suspected Ryba of laundering money, but nevertheless found evidence of such activity while conducting the search, that evidence would likely be admissible under Williams. However, the parties did not brief this issue and the court agrees with the government that the affidavit supported probable cause to search for evidence of money laundering. Therefore, the court need not reach a conclusion as to the applicability of the plain view doctrine in this case.

The Magistrate Judge also had a substantial basis for determining that evidence of those crimes was probably located in both the Deborah and Deby email accounts. As the Fourth Circuit has held, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). For example, this standard allows law enforcement to search the home of a drug dealer because of a "reasonable suspicion ... that drug traffickers store drug-related evidence in their homes." Lull, 824 F.3d at 119 (ellipsis original). Likewise, Agent Smith had a reasonable suspicion that Ryba stored drug- and money laundering-related evidence in her email accounts.

The search warrant sought information relating to the movement of illicit substances and associated funds. Concluding that this information would probably be found in Ryba's email accounts is the type of inference supported by Anderson. Law enforcement had already obtained two emails from the Deborah account that contained shipping information of international packages sent to known drug traffickers, showing that Ryba communicated about likely drug activity via email. Moreover, the myriad financial transactions set forth in the affidavit, together with the fact the Deby account was linked to an E* Trade investment profile, supports the inference that evidence of money laundering activity would be present in Ryba's email accounts. See Lull, 824 F.3d at 119; United States v. Bradley, 644 F.3d 1213, 1264 (11th Cir. 2011) (finding sufficient nexus between defendant's home and evidence of money laundering in part because defendant regularly received mail of a financial nature at

11

his home). Therefore, the court concludes that the Magistrate Judge had a substantial basis on which to find probable cause to search both the Deborah and Deby email accounts.

Although not directly stated, Ryba appears to suggest that the grounds for searching the Deby account are thinner than the grounds for searching the Deborah account. However, the court need not make such a distinction. In United States v. Grossman, 400 F.3d 212, 218 (4th Cir. 2005), the Fourth Circuit found a sufficient nexus between the defendant's drug activity and three residences where he stayed from time to time. The court recognized that "it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key." Id. The same logic applies here. The fact that the Deborah and Deby email accounts have separate addresses does not require separate findings of probable cause in this case. Ryba had access to both accounts and the affidavit shows her history of informing a coconspirator about international shipments via email. Those emails were sent within weeks of Ryba's partner receiving $185,300 from Schroeder. Given these circumstances, it was reasonable for law enforcement to suspect that Ryba kept information relating to drug trafficking and money laundering crimes in her two email accounts.

The breadth of the evidence set forth in the affidavit strongly supports the Magistrate Judge's determination that probable cause existed in this case. Agent Smith did not rely solely on one questionable source in showing that Ryba's connections to drug trafficking and money laundering activity. See Lull, 824 F.3d 109 (finding a Franks violation where probable cause hinged on the statements of a confidential informant whom the court deemed unreliable). Rather, Agent Smith relied on extensive information gathered from financial records, travel records, multiple cooperating witnesses, wiretaps, and other investigative

12

Case 5:16-cr-00008-NKM Document 294 Filed 03/24/17 Page 12 of 20 Pageid#: 1876

sources. Accordingly, Ryba does not allege that the affidavit suffers from one fatal defect. Instead, she argues that the affidavit includes "a series of misleading statements and omissions that, taken as a whole, create a false illusion of probable cause." ECF No. 243, at 3. The court will now address these alleged defects.

### 3.

To successfully mount a <u>Franks</u> claim, Ryba must show that the alleged inaccurate statements and omissions were "necessary to the finding of probable cause." <u>Franks</u>, 438 U.S. at 156. If, in the absent of the alleged defects, the affidavit would have established probable cause, then the defects were not material under <u>Franks</u> and the search of Ryba's email accounts was valid. <u>Wharton</u>, 840 F.3d at 169. In her motion to suppress, Ryba includes 19 numbered paragraphs alleging misleading statements and material omissions. None of the concerns raised by Ryba, taken separately or in combination, materially affect the evidence in the affidavit plainly supporting the probable cause finding.

### a. Innocent Explanations of Facts in Affidavit Do Not Defeat Probable Cause.

Ryba claims that the affidavit presents some facts that lend themselves to benign explanations. However, such explanations do not undermine a finding of probable cause. For example, the affidavit details two money transfers between Bradley and Ryba, which in part led Agent Smith to believe that Ryba was assisting Bradley with the concealment of drug proceeds. Aff. ¶ 19. Ryba argues that money transfers between husband and wife are not indicative of criminal activity. Ryba also takes issue with the affidavit's characterization of payroll withdrawals from the Modern Day Prophet bank account, totaling more than $375,000 issued to its principals between September 2011 and September 2012. She simply

13

comments that "given the scope of the business, such a payroll is hardly a suspicious circumstance." ECF No. 243, ¶ 3. Additionally, Ryba argues that her email addresses, which openly include her name, do not comport with Agent Smith's assertion that narcotics traffickers often go to great lengths to conceal their identity. Ryba also claims that Schroeder's intercepted comment, that he anticipated his "boy" sending more drugs in late November 2014, was too vague for the Magistrate Judge to assume Schroeder was referencing Bradley or Ryba. According to Ryba, "there is no basis to associate this with Bradley and Ryba, except that [they were] to be on the same side of the International Date Line as a source of supply for cathinones." ECF No. 243, ¶ 18.

These benign explanations for the facts included in the affidavit in no way undermine the Magistrate Judge's probable cause determination. "[T]he confluence of factors independently susceptible of innocent explanation may provide the requisite basis for a finding of probable cause." United States v. Garcia, 848 F.2d 58, 60 (4th Cir. 1988) (citing Gates, 462 U.S. at 245 n.13 ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause.")). Indeed, the court must consider the totality of the circumstances included in the affidavit and judge each fact accordingly. See Gates, 462 U.S. at 267. Ryba's emails to Schroeder and Modern Day Prophet's contemporaneous payments to Bradley inform the reading of the entire affidavit, which as a whole shows a "probability or substantial chance of criminal activity[;] an actual showing of such activity" is not required. Id. at 245 n.13.

14

### b. Claimed Defects are Immaterial to the Finding of Probable Cause.

A number of Ryba's assertions in her motion to suppress do not point to a false statement or omission actually present in the affidavit, much less a material defect. See United States v. White, No. 16-4070, 2017 WL 942653, at *4 (4th Cir. Mar. 9, 2017) (If Ryba "cannot point to a false statement [or omission]" then her Franks claim fails.). For example, Ryba takes issue with the various spellings of Modern Day Prophet included in the affidavit, pointing out that Prophet is sometimes spelled as "Prophets," "Profit," or "Profits." ECF No. 243, ¶ 1. She does so without explaining how these misspellings amount to a Fourth Amendment violation, which they do not.[9] Other numbered paragraphs in the motion to suppress, which Ryba submits to illustrate the "inaccuracies" in the affidavit, merely summarize the facts set forth in the affidavit and do not allege any inaccurate statement or omission. See ECF No. 243, ¶¶ 2, 4, 8, 13, 17. The court need not address these portions of Ryba's motion further as they do not advance Ryba's claim under Franks. See White, 2017 WL 942653 at *4.

Ryba also erroneously claims that the affidavit falsely implies certain facts.[10] For example, Paragraph 29 of the affidavit details information obtained from a wiretap on Schroeder's phone, including Schroeder's efforts to locate packages shipped from abroad

---

[9] Minor typographical errors in a search warrant affidavit do not defeat probable cause. See United States v. McClellan, 165 F.3d 535, 545 (7th Cir.1999) (transposed digits in address of target house in one portion of affidavit did not undermine probable cause finding; remainder of affidavit had correct address); cf. United States v. Ventresca, 380 U.S. 102, 108 (1965) (Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation.").

[10] As one court has noted, "[i]t is hard to envisage any circumstance in which a 'false implication' would meet a defendant's burden in a Franks dispute." United States v. Prideaux-Wentz, No. 07-CR-63-C, 2007 WL 5649508, at *8 (W.D. Wis. Aug. 3, 2007), R&R adopted, No. 7-CR-0063-C-01, 2007 WL 5490159 (W.D. Wis. Sept. 4, 2007), aff'd, 543 F.3d 954 (7th Cir. 2008). Nevertheless, as was the case in Prideaux-Wentz, "there [are] no such vagaries here." Id. The alleged implications are not present in the affidavit, and therefore, not material to a finding of probable cause.

15

that he had not received. Ryba argues that the inclusion of this information in the affidavit implies she was personally involved with these shipments. However, the affidavit does not identify Ryba, expressly or by implication, as having anything to do with these lost packages. Rather, the point of Paragraphs 29 and 30 of the affidavit is that in his intercepted call, Schroeder complains that his "boy" was not going out there until November, and Bradley and Ryba travelled to Thailand that same month.

Additionally, Ryba asserts that the affidavit falsely implies she and Bradley lived in China from August 2011 until June 2012, when in fact they were living in Thailand. However, the affidavit plainly states that Bradley and Ryba lived in "Asia" during this time, having arrived in China and departed from Hong Kong. Aff. ¶ 14. The assertion that Bradley and Ryba were in Asia is not misleading, literally or by implication.

Ryba asserts that Agent Smith omitted certain information from the affidavit that, if included, would have resulted in the rejection of the search warrant application. This argument is unpersuasive as the alleged omissions were not material to the Magistrate Judge's finding of probable cause.

Ryba points to information in the affidavit indicating that her E* Trade investment profile listed her home address as that of a UPS store in Chicago, Illinois. Agent Smith also states he "is aware based on training and experience that individuals involved with narcotics trafficking and/or money laundering utilize third parties … to conceal their illegitimate income and assets." Aff. ¶ 19. Ryba argues that "[h]ad Special Agent Smith done any significant investigation … he would also have known that that address is in the same building as Bradley and Ryba's collections business, and that that was the same address Ryba

used on her Illinois driver's license." ECF No. 243, ¶ 11. She also explains that she used this address as her home address, with the approval of the Illinois Department of Motor Vehicles, to avoid detection by an individual who has a history of stalking Ryba. While these facts provide an innocent alternative purpose for listing the UPS store as Ryba's home address, they do not eviscerate a finding of probable cause. See Garcia, 848 F.2d at 60; Wharton, 840 F.3d at 169. The address Ryba listed on her E* Trade profile in no way undermines the fact that she emailed Schroeder information of international shipments addressed to members of Modern Day Prophet or that Bradley received substantial funds from Modern Day Prophet around that time. Therefore, even if Agent Smith included the information proffered by Ryba regarding the home address listed on her E* Trade profile, probable cause nevertheless would have been present.

Ryba complains that paragraph 17 of the affidavit is misleading because it erroneously suggests that Ryba and Bradley were not involved in electronic cigarette sales. Ryba's complaint is immaterial. With or without information about electronic cigarettes, the affidavit details the drug dealing acts of Modern Day Prophet and its principals, notes that Bradley received large quantities of money, and Ryba's contemporary emails detailing shipping information. In short, Ryba and Bradley may have been engaged in the electronic cigarette trade, but that alternative explanation does not negate the probable cause that Ryba's email accounts were involved in drug dealing and money laundering established by: (1) Modern Day Prophet's drug dealing activities, (2) Bradley's receipt of large quantities of money from Modern Day Prophet, and (3) Ryba's contemporaneous emails of shipping details.

17

Case 5:16-cr-00008-NKM Document 294 Filed 03/24/17 Page 17 of 20 Pageid#: 1881

Ryba takes issue with the affidavit's failure to state that Ryba and Bradley conducted their electronic cigarette and debt collection businesses entirely lawfully. Ryba asserts that this information would have undermined Agent Smith's recitation that "illegal businesses do not maintain proper corporate registrations, do not file business licenses, do not maintain employee records, do not pay payroll taxes, etc." ECF No. 243, ¶ 15. Setting aside the fact that the affidavit includes no such recitation, the legitimate nature of Bradley and Ryba's e-cigarette and debt collection businesses does not undermine the illegitimate nature of sending packages to and getting paid by drug traffickers. Therefore, the inclusion of this information would not advance Ryba's claim under Franks.

Ryba argues that the affidavit includes only a sliver of Bradley's financial records, omitting certain information that would have undermined a finding of probable cause. Ryba claims that Bradley did not receive any payments from Modern Day Prophet after July 2012, and that between July 2012 and February 2014 Bradley's Bank of America account balance dipped as low as $6,000. Bradley sold a car and received other legitimate business revenue that, according to Ryba, allowed his account balance to exceed $100,000 by the fall of 2013. This information regarding Bradley's Bank of America account balance between July 2012 and February 2014 is not present in the affidavit. However, the affidavit includes information about a $10,000 transfer from Bradley's Bank of America account to Ryba's E*Trade account on February 7, 2014. Agent Smith stated that this transfer supported his belief that Ryba was assisting Bradley "with the concealment of drug proceed money." Aff. ¶ 19. Ryba rebuts this conclusion, arguing that the complete financial records show any payments from Modern Day Prophet had depleted by fall of 2013, and therefore, the

18

February 7, 2014 transfer could not have reflected the transfer of drug proceeds. Ryba argues that had Agent Smith included the entire scope of Bradley's financial records, the February 7, 2014 transfer from Bradley to Ryba would not have appeared suspicious. While this is one of Ryba's stronger arguments, it nevertheless falls short of establishing a Franks violation.

The core facts in the affidavit—i.e., Modern Day Prophet paying Bradley more than $185,000 within weeks of Ryba emailing Schroeder about international packages sent to members of Modern Day Prophet—provided sufficient probable cause to search Ryba's email accounts. Even if the February 7, 2014 transfer from Bradley to Ryba had been omitted from the affidavit, probable cause would have still existed to conduct the search. Therefore, information related to the February 7, 2014 transfer (suggesting the transfer did not reflect drug proceeds) was likewise immaterial to the finding of probable cause. In short, had Agent Smith included the entirety of Bradley's financial records in the affidavit, the Magistrate Judge would have still possessed a substantial basis on which to find probable cause for the search. Wharton, 840 F.3d at 169; Gates, 462 U.S. at 239.

Having determined that Ryba's alleged defects do not materially alter the affidavit, the court must reject Ryba's claim that the affidavit misled the Magistrate Judge's determination of probable cause. Ryba's Fourth Amendment protections were not violated. Sufficient facts set forth in the affidavit, which Ryba failed to undermine, showed to a fair probability that Ryba was involved in drug trafficking and money laundering activity and that evidence of those crimes was probably located in both the Deborah and Deby email accounts.

19

## III.

For the reasons stated, the court **DENIES** Ryba's motion to suppress. ECF No. 243. The evidence obtained from the search of the Deborah and Deby email accounts (deborahryba@gmail.com and debyryba@gmail.com) will not be excluded at trial.

An appropriate Order will be entered.

Entered: 03-24-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge